K. C. JONES v. THE STATE.

*No. 411. Decided May 18, 1910.*

Rehearing Granted October 26, 1910.

1.—Murder—Jury and Jury Law—Insanity—Reasonable Doubt—Preponderance of Evidence.

Where, upon trial of murder, the defendant asked the jurors on their voir dire if they would give the defendant the benefit of the doubt as to his insanity, to which the district attorney objected, and the court instructed the jurors that they need not answer the question; that the doctrine of reasonable doubt did not apply to the issue of insanity, but that the jury must find from the preponderance of the evidence that the defendant was insane at the time of the commission of the offense before they could acquit, there was no error.

2.—Same—Challenge for Cause—Insanity—Overwhelming Proof.

Where, upon trial of murder, a juror upon his voir dire answered that he would not acquit the defendant on the theory of insanity even if he was convinced and the instruction of the court was to acquit, unless the evidence on this point

was overwhelmingly convincing to him of the fact of insanity, it was reversible error not to permit defendant to challenge said juror for cause.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. E. R. Campbell.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Uvalde Burns,* for appellant, filed an able brief on motion for re-hearing, which was largely adopted in the opinion of the court, and cited cases in the opinion.

*John A. Mobley,* Assistant Attorney-General, and *W. G. Love,* for the State.—On the question of the qualification of the juror as to the plea of insanity: Cannon v. State, 41 Texas Crim. Rep., 467; State v. Welsor, 117 Mo., 570; State v. Baber, 74 Mo., 292; People v. Carpenter, 102 N. Y., 238; Butler v. State, 97 Ind., 378; State v. Croney, 31 Wash., 122.

RAMSEY, Judge.—On the 17th day of June of last year there was presented in the Criminal District Court of Harris County an indictment against appellant charging him with the murder of one Charles Stewart. At a trial had in said court on the 14th day of October thereafter he was by the jury found guilty of murder in the first degree and his punishment assessed at death.

The facts in the case briefly show that appellant and deceased were at work at a grading camp for Suderman-Dolson Co., and that about the 26th day of May, 1909, appellant with a shotgun shot and killed deceased. There were two eyewitnesses to the killing, one of whom was C. H. Nebbe, who was foreman of the grading camp. The following quotation from his testimony will give a fair idea of the immediate facts of the killing:

"The killing occurred after I came in from work, about a quarter past six o'clock, I should judge; they came in and put the horses up and was getting ready to eat supper, and there was a little boy over there, lived close by there, he was over there and had a gun; this man, K. C. Jones (pointing at the defendant), borrowed the gun from him and two shells, I think, and came around through the tent where Stewart was and shot him. When Jones came up there Stewart was not doing anything at all. I heard Stewart ask him if he had that gun for him, and he said no; that he had it to kill some birds with; that he wanted to see if he could kill some birds, and Stewart walked into the tent and stood inside the tent with his back towards the opening and Jones walked up in front of the tent and shot him once there. Stewart did not do anything then; he fell down on his knees. Stewart then started to crawl along beside the tent; there was commissary over there, some groceries

piled up there, and he crawled around behind over there back between them and the tent, and Jones in the meantime had walked away from the tent a little piece, and then he came back up towards the tent; I was in the tent at the time he shot the first shot, and before he shot the second time I walked out the tent and told him not to shoot any more, and he said, 'Yes, I will shoot you, too,' and pointed the gun at me, and I told him not to shoot and I kinder stepped a little to one side and then Stewart spoke up and said, 'Don't shoot any more,' and the defendant walked up on the outside of the tent where the dead man, Stewart, was between the wall of the tent and them groceries; he was crawling along there and he could see him there, and he walked right up to where he was and pointed the gun at him again and shot the second time, and then he left the camp then. I went to Stewart after he was shot the second time. The first time he shot him in the leg, in the calf of the leg, and the second time he shot him in the left groin. I could not tell you exactly how long Stewart lived; I went down to the junction to telephone the officers and he was dead when I got back. Stewart had been working there close on to two months; I do not remember exactly. I do not know of any trouble between these two boys before that time. I heard Jones say something to Stewart; he told him before he fired the first shot that he did not treat him right; that he was going to get him. That was all that he said. When he shot him the first time Stewart was not doing anything—standing with his back towards him."

There was some evidence of some unpleasantness and ill-will on the part of appellant towards deceased. The mother and brother of appellant went upon the witness stand and testified in brief that he had suffered some injuries when quite a lad, and that his mind was not, in their opinion, sound. No physician was produced to corroborate this testimony, nor was there produced any testimony from any other source supporting same. Mr. Nebbe testified some little time before the killing appellant had, while at the camp, an epileptic fit. He had been at work though for something like two months, and there seems to have been no complaint of the way he did his work, and none of those associated with him saw any indications of any mental impairment. The State also offered in evidence the testimony of the jailor of Harris County, who testified, in substance, that during the time appellant had been confined in jail, since the 26th of May, that he had not had within his knowledge any fits, and further, that basing his opinion on his opportunities for observing him, that he was sane. One Philip Roberts, a prisoner from jail, testified that appellant had had a couple of fits while in jail, and that at one time appellant called on him to fan him. That he made no report of this, however, and no physician was called for. This witness had at the time of giving his testimony, as he states, two or three charges of assault to murder pending

against him. R. Daniels, another jailor, testified he had had opportunities of observing appellant, and that there was nothing in his conduct to indicate insanity. We deem it unnecessary to set out the details of the evidences of insanity. They are, as we believe, very slight, and while they raise the issue, the testimony was far from satisfactory or conclusive.

1. During the trial counsel for appellant, in stating the case to the jury on their voir dire examination, called their attention to the fact that insanity was an issue, and asked them if they recognized a condition of the mind known as insanity. This question was answered in the affirmative. Thereupon the following question was asked: "Well, if you should believe from the evidence that the defendant was insane or crazy at the time of the commission of the alleged offense, would you acquit him?" This question was also answered in the affirmative. The jurors were then asked with reference to reasonable doubt as to his insanity at the time of the killing, and if they would give the defendant the benefit of the doubt. The district attorney objected to the question and the answer sought to be elicited thereby for the reason this was not the true test or a proper statement to the jurors, under the law. The court instructed the jury that they need not answer the question; that the doctrine of reasonable doubt does not apply to the issue of insanity. Appellant's counsel thereupon stated to the court that he was under the impression that reasonable doubt applies to every material issue in the case, whereupon the court replied in the negative, stating that it did not apply to insanity, and that he would charge the jury that if they believe from a preponderance of the evidence that the defendant was insane at the time of the commission of the offense charged in the indictment, it is their duty, and they must acquit. Counsel for appellant excepted to the action of the court in not permitting and requiring the jurors to answer the question. We have no doubt that the action of the court was entirely proper.

2. The next bill of exception presents a more material matter, and to insure accuracy we set it out entire. It is as follows:

"Be it remembered that on the trial of the above numbered and entitled cause, during the progress of the examination of the venireman M. C. McLilland after the district attorney had concluded the examination, and had passed the venireman to the defendant, all defendant's peremptory challenges having been exhausted, defendant's counsel asked the following questions, to wit:

Q. This is a case of the State of Texas against K. C. Jones; he is alleged to have killed a man by the name of Charles Stewart on the 26th day of May of this year out here at Suderman-Dolson's camp, in Harris County, Texas. Have you from hearsay or otherwise formed in your mind such an opinion as to the guilt or innocence of the defendant as would influence your action as a juror in arriving at a verdict?

A. I don't remember ever hearing of the case.

Q. Have you any scruples against inflicting the death penalty as a punishment for crime?

A. No, sir.

Cross-examination: Q. You say you never heard anything about the case? A. Don't recall anything about it. Q. How long have you lived in Texas? A. I have been here in Houston forty-five years. Q. What is your business? A. I am in the real estate and investment business. Q. Have you any prejudice against the negroes as a race? A. I can not say that I have; I have handled and worked negroes all my life. Q. Would the fact that the party killed was a white man and the defendant here, a negro, would that create in your breast any prejudice against him? A. No, I do not think it would. Q. Are you sure about that? A. No, it would not create any prejudice one way or the other. Q. Do you recognize a condition of the mind known as insanity? A. Yes, sir, I know that there is such a condition that exists. Q. If you were selected as a juror, and the State were to prove conclusively that the defendant killed the deceased without legal justification or provocation and the plea of insanity was interposed, and we were to establish his insanity by a preponderance of evidence, and the court would charge you that if you believed that his insanity was established by a preponderance of the evidence; that at the time of the commission of the offense he was insane, you should acquit him, suppose that was established on his part and suppose the court should submit a charge as indicated, what would be your action in the matter? A. Well, there would have to be mighty strong evidence of insanity to make me believe it to the point of acquitting a man that I thought was guilty or otherwise. Q. Suppose the preponderance was in favor of that contention, and the court would charge you, in view of the preponderance of the evidence sustaining the contention of insanity, you are required to acquit him, would you follow the instruction of the court or adhere to your judgment as you understand it? A. Well, I would judge if the instructions of the court were to that effect, that the preponderance of the evidence would be overwhelming, of course. Q. Suppose simply that the evidence, as far as that contention is concerned, preponderated to the effect that he was insane and suppose the court instructed you, if you believe from the preponderance of the evidence that the defendant was insane at the time of the commission of the offense, you should acquit him, you must acquit him, what would you do in the matter? The court: You understand that you will be the judge of the evidence; the evidence will be submitted to you; the court will charge you as a matter of law, that if the defendant was insane at the time he committed this offense, he is not responsible in this case and you must acquit him, and the evidence shows to your satisfaction, by a preponderance of the evidence, that he was insane at the time, under

the court's charge, you must acquit him, the question is whether you would follow the court's charge and acquit him, if you believe from the evidence he was insane at the time he committed the offense? A. Yes, I would follow the court's charge in that case. The court: You are not required to discuss what the evidence would have to be, that is the action of your own mind; the question is, after you are convinced by a preponderance of that evidence. A. If I was convinced and the instructions of the court were to acquit, in that case I would follow the instructions of the court. Q. The evidence on that point would have to be overwhelming? A. It certainly would be. Defendant: I challenge the juror for cause, the defendant has already exhausted his peremptory challenges. The court: I will overrule the challenge. Defendant: To which action of the court the defendant excepts for the reason that the juror stated that the preponderance of the evidence in order to authorize him to acquit the defendant must be overwhelming and the defendant objects because the juror requires a greater degree and a greater amount of testimony in support of the contention of insanity than the law requires. The defendant further challenges the juror for cause, which challenge is overruled and not sustained by the court, to which action of the court and its ruling the defendant here now excepts and reserves this his bill for the same cause, all of defendant's peremptory challenges having been exhausted. The State: We will take him. Defendant: We object to him, for cause. The court: Challenge overruled." ·

That this juror, judged by his answers, was not, in a case where the issue of insanity is involved, a desirable juror may be conceded. That he was disqualified, we do not believe. Article 673 of the Code of Criminal Procedure undertakes to set out in detail the grounds of disqualification of jurors, and embraces fourteen different and distinct causes and grounds of disqualification. Subdivision 12 of this article is as follows: "That he has a bias or prejudice in favor of or against the defendant." The answers of the juror seem distinctly to negative this ground of disqualification. The 13th subdivision, entire, of the article in question, is as follows: "That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as will influence him in his action in finding a verdict.

"For the purpose of ascertaining whether this cause of challenge exists, the juror shall be first asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative he shall be discharged; if he answers in the negative he shall be further examined by the court, or under its sanction, as to how his conclusion was formed and the extent to which it will affect his action, and if it appears to have been formed from reading newspaper accounts, communications, statements or reports, or from mere rumor or hearsay, and if the juror states on oath that he

feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case; but if the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged."

Now, in this case, the juror, under proper instructions, stated that he would follow the court's charge in the case, and that if he was convinced, and the instructions of the court were to acquit, in that case he would follow the instructions of the court. He was thereupon asked the leading question: "The evidence on that point would have to be overwhelming?" And his answer was: "It certainly would be." We know of no authority and can think of no good reason why counsel should be permitted to go into an analysis of or inquiry into the mental operations of jurors, or to interrogate them in respect to the measure or quantum of proof that would, in respect to any issue, satisfy them. Some men are by nature credulous, others suspicious; some men are quick to believe any given state of facts in harmony with their sympathies, and others reluctant to believe any fact which they have not themselves observed. Besides, we think that it is evident from the entire record that the use by the witness of the word "overwhelming" was not very accurately used, and probably not wholly intended. If, however, this were not true, where it appears that the juror had no information or knowledge about the case which would disqualify him, where it appears that he had no bias or prejudice against or in favor of the accused, and when he expressed his ability to try the case under the evidence and according to the law and the court's instructions, we do not believe that the mere fact on any given issue he states that he requires same to be proven by any quantum of proof, that this shall operate to disqualify him, unless his answer went to the extent of showing a prejudice against his defense or a mental attitude that would show a prejudgment of the case or an unwillingness or inability to do the defendant and his case justice. If this were true, then any statement of a juror that he would be willing on slight proof to find insanity, would be a disqualification and a ground of challenge by the State. Just where the safe ground is, if this reasoning is to be followed, for the juror to occupy before he would be qualified under the law, it would require an apothecary's scale to take due measure of the weight of testimony required to convince the qualified juror, or a divining rod to locate the dividing line between the qualified and the disqualified juror.

3. The other matters assigned in the motion for new trial are not substantial. The proof is overwhelming of appellant's guilt. The murder seems to have been premeditated. His victim was without cause shot down, and while begging for his life he is followed

up and in his prostrate condition sent into eternity. The evidence of insanity is flimsy and of the weakest character. The charge of the court is correct and accurate. Nor is there any error in the case for which the judgment of conviction ought to be set aside.

The judgment is therefore affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge (dissenting).—Being unable to agree with my brethren in the conclusion reached in the disposition of this case I respectfully enter my dissent. I am of opinion that McLilland was not a competent, fair or impartial juror, and should not have been permitted to sit on the trial of this case. When the State had finished examining this juror he was turned over to appellant for further examination in regard to his competency, when the following matters occurred as shown by the bill of exceptions:

"This is a case of the State of Texas against K. C. Jones; he is alleged to have killed a man by the name of Charles Stewart on the 26th day of May of this year out here at Suderman-Dolson's camp, in Harris County, Texas. Have you from hearsay or otherwise formed in your mind such an opinion as to the guilt or innocence of the defendant as would influence your action as a juror in arriving at a verdict? A. I don't remember ever hearing of the case. Q. Have you any scruples against inflicting the death penalty as a punishment for crime? A. No, sir.

Cross-examination: Q. You say you never heard anything about the case? A. Don't recall anything about it. Q. How long have you lived in Texas? A. I have been here in Houston forty-five years. Q. What is your business? A. I am in the real estate and investment business. Q. Have you any prejudice against the negroes as a race? A. I can not say that I have; I have handled and worked negroes all my life. Q. Would the fact that the party killed was a white man and the defendant here, a negro, would that create in your breast any prejudice against him? A. No, I do not think it would. Q. Are you sure about that? A. No, it would not create any prejudice one way or the other. Q. Do you recognize a condition of the mind known as insanity? A. Yes, sir, I know that there is such a condition that exists. Q. If you were selected as a juror, and the State were to prove conclusively that the defendant killed the deceased without legal justification or provocation and the plea of insanity was interposed, and we were to establish his insanity by a preponderance of evidence, and the court would charge you that if you believed that his insanity was established by a preponderance of the evidence; that at the time of the commission of the offense he was insane, you should acquit him, suppose that was established on his part and suppose the court should submit a charge as indicated, what would be your action in the matter? A. Well, there would have to be mighty strong evidence of insanity to make me

believe it to the point of acquitting a man that I thought was guilty
or otherwise.   Q. Suppose the preponderance was in favor of that
contention, and the court would charge you, in view of the prepon-
derance of the evidence sustaining the contention of insanity, you
are required to acquit him, would you follow the instruction of the
court or adhere to your judgment as you understand it?   A. Well,
I would judge if the instructions of the court were to that effect,
that the preponderance of the evidence would be overwhelming, of
course.   Q. Suppose simply that the evidence, as far as that conten-
tion is concerned, preponderated to the effect that he was insane
and suppose the court instructed you, if you believe from the pre-
ponderance of the evidence that the defendant was insane at the
time of the commission of the offense, you should acquit him, you
must acquit him, what would you do in the matter?   The court:
You understand that you will be the judge of the evidence; the
evidence will be submitted to you; the court will charge you as a
matter of law, that if the defendant was insane at the time he com-
mitted this offense, he is not responsible in this case and you must
acquit him, and the evidence shows to your satisfaction, by a pre-
ponderance of the evidence, that he was insane at the time, under
the court's charge, you must acquit him, the question is whether you
would follow the court's charge and acquit him, if you believe from
the evidence he was insane at the time he committed the offense?
A. Yes, I would follow the court's charge in that case.   The court:
You are not required to discuss what the evidence would have to
be, that is the action of your own mind, the question is, after you
are convinced by a preponderance of that evidence?   A. If I was
convinced and the instructions of the court were to acquit, in that
case I would follow the instructions of the court.   Q. The evidence
on that point would have to be overwhelming?   A. It certainly
would be.   Defendant: I challenge the juror for cause, the defend-
ant has already exhausted his peremptory challenges.   The court:
I will overrule the challenge.   Defendant:  To which action of the
court the defendant excepts for the reason that the juror stated that
the preponderance of the evidence in order to authorize him to ac-
quit the defendant must be overwhelming and the defendant objects
because the juror requires a greater degree and a greater amount of
testimony in support of the contention of insanity than the law re-
quires.   The defendant further challenges the juror for cause,
which challenge is overruled and not sustained by the court, to
which action of the court and its ruling the defendant here now
excepts and reserves this his bill for the same cause."

Appellant's peremptory challenges were exhausted before this juror
was reached.   He insisted on the trial and now insists, and I think
correctly, that his challenge for cause to this juror should have been
sustained under his answers as contained in the bill of exceptions.
By those answers the juror made it certain that he would not acquit

appellant on the theory of insanity, even if he was convinced and the instructions of the court were to acquit, unless the evidence on that point was overwhelmingly convincing of the fact of insanity. His reply was that "It certainly would have to be overwhelming." Under no rule of law or of evidence is it required or has been required that insanity must be overwhelming in order to authorize or require an acquittal on that theory. The rule has always been in this State, that an acquittal would be required when there was a preponderance of evidence to the effect that appellant was insane. A preponderance of the testimony is the limit of the rule in such state of case. The law only demands that quantum of evidence. The law does not require that the testimony should establish insanity by overwhelming proof. This juror was evidently an unfair one to the accused, and was not of that impartial character which is required by the Constitution—article 1, section 10—and demanded by the law. He says, "If I was convinced and the instructions of the court were to acquit, in that case I would follow the instructions of the court." But he further says, the evidence on that point would certainly have to be overwhelming. It would seem, therefore, from the answer of the juror that even if the court were to instruct an acquittal, that he would not be governed by the instructions unless the facts were overwhelming that appellant was insane. The legal preponderance of evidence required by the law and stated in the charge of the court would not be the governing rule with this juror. His criterion was above the law and the charge of the court, and required that the evidence be overwhelming in its nature and effect. The evidence in the case was not overwhelming to his mind as demonstrated by his verdict of death.

I can not bring myself to the point of agreeing with my brethren in the affirmance of this judgment for the reasons stated, and, therefore, respectfully enter this my dissent.

### ON MOTION FOR REHEARING.

#### October 26, 1910.

RAMSEY, Judge.—This case was affirmed at the last term of this court. At that time Judge Davidson dissented, believing that the juror McLilland was disqualified and that the court erred in overruling appellant's challenge of him. Soon thereafter a motion for rehearing was filed in this court in which the matter is very strongly presented. In this motion there is a very clear distinction drawn between what is meant by a mere preponderance of the testimony and what would be required to show insanity by overwhelming proof. This matter is so well presented that we here adopt the following portion of this motion:

"Now, what conclusion concerning his guilt appears to be established in the mind of the juror, McLilland? It is clearly his fixed

opinion and established state of mind, that the defendant having so killed without legal justification or provocation is guilty, unless by overwhelming evidence it is proved that he was insane. But the law does not require the defendant by any such quantum of proof to establish that fact. He is required to establish it by a mere preponderance of the evidence. And here it may be proper to observe what is the difference between 'overwhelming' proof and a 'preponderance' of the testimony.

"The word 'preponderance' having so plain and well understood a meaning we do not find a great number of cases where the courts have found it necessary to define the term. In its original meaning, as is universally understood, it is simply an outweighing. The Century Dictionary gives the definition as, 'Superiority in force, influence, quantity, or number; predominance,' and quotes Whipple's Essays, showing the plain and well understood meaning.

" 'In his speeches we are struck more by the general mental power they display than by the preponderance of any particular faculty.' Nothing could be added to that definition and illustration; and no average mind of an English speaking person ever otherwise understood it. In the case of Groesbeck v. Marshall, 44 S. Car., 538, the court defines the term, and shows plainly how wide a departure there is in such a phrase from any such word as 'overwhelming.' The court says, 'The phrase "preponderance of the testimony" means, more likely than not.' In the case of Ball v. Marquis, 92 N. W. Rep., 691, et seq., the court says: 'Evidence may preponderate, and yet leave the mind in doubt as to the very truth. In such cases the evidence does not fairly set at rest, but merely preponderates in favor of that side whereon the doubts have less weight.' Preponderating evidence may not satisfy the mind of its truth. Bryan v. C., R. I. & P. Ry. Co., 19 N. W. Rep., 295.

"Upon the other hand, what does the term 'overwhelming proof' mean? Merely that it must outweigh the opposing contention? We hardly think it will be so asserted. The Century Dictionary defines overwhelming to mean, 'To overturn and cover; overcome; swallow up; submerge; overpower; crush,' and gives the illustration, 'The sea overwhelmed their enemies.' Psalms LXXVIII, 53. 'Overwhelming proof is proof sufficient to remove every doubt from the mind.' Bond v. Dorsey, 65 Md., 310. In State v. Ward, 39 Vermont, 225, it is said: 'Where it appears upon the voir dire of a juror that he would require more evidence than is legally required to convict, this circumstance ought to disqualify him.' To the same effect are Waller v. State, 40 Ala., 325; Wright v. Comm., 32 Gratt. (Va.), 941. So, we confidently submit that there is no similarity of meaning between the terms, 'overwhelming proof' and preponderance of the testimony.

"And where the law requires the latter quantum, and a juror upon his voir dire testifies that he will require the former, he disqualifies

himself to hear the defense of a defendant charged with murder, whose sole reliance is that he committed the homicide without legal justification or provocation, and was insane at the time, and offers to prove the same by a preponderance of the testimony, which, while it may leave the mind in doubt as to the very truth, shall preponderate in favor of that side whereon the doubts have less weight, that is, where weighed by a mind open to such conviction upon such testimony; but who admits his inability to prove his defense by *overwhelming*. proof—a species of proof hardly within the reach of a young and obscure negro, who, while always afflicted, had never been adjudged insane by a court, and had, happily, never before committed an act of such violence."

On further consideration the majority of the court are firmly convinced that we were in error in affirming the judgment of conviction. I confess that my own views have undergone some change, and while not clear that the original opinion is wrong, I am as far from being clear that it is right. It is a case with a death penalty. In such a case it is all important that appellant should have been tried by a jury free from substantial objection. Out of respect to the opinion of my associates and having some doubt myself as to the correctness of the original opinion, I think it both safer and wiser to hold the juror disqualified on the ground stated in appellant's objection, and to grant the motion for rehearing, set aside the affirmance, and reverse and remand the judgment, which is now done.

*Reversed and remanded.*